JoAnn S. Secrist, Attorney for Plaintiffs
640 E. 700 South, Ste. 302
St. George, UT 84770
435-668-2021

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| HENRY S. BROCK, | ) | |
| JAY RICE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Cause No. |
| v. | ) | |
| | ) | |
| GARY HERBERT, in his official and | ) | |
| individual capacities, | ) | |
| | ) | |
| MARK L. SHURTLEFF, in his official | ) | |
| and individual capacities, | ) | |
| | ) | |
| FRANCINE GIANI, in her official and | ) | |
| individual capacities, | ) | |
| | ) | |
| TONY TAGGART, in his former official | ) | |
| and individual capacities, | ) | |
| | ) | |
| WAYNE KLEIN, in his former official and | ) | |
| individual capacities, and | ) | |
| | ) | |
| KEITH WOODWELL, in his official and | ) | |
| individual capacities, | ) | |
| | ) | |
| GEORGE ROBISON, in his official and | ) | |
| individual capacities, and | ) | |
| | ) | |
| STATE OF UTAH | ) | |
| ` | ) | |
| Defendants. | ) | |

**COMPLAINT AND MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Henry S. Brock and Jay Rice, for their complaints against Defendants Gary Herbert, Mark L. Shurtleff, Francine Giani, Tony Taggart, Wayne Klein, Keith Woodwell, George Robison, and the State of Utah states as follows:

**INTRODUCTION**

1.        This is a an action for money damages, declaratory, and injunctive relief brought pursuant to 42 U.S.C. Section 1983, the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Articles I, Sections 1, 2, 7, 9, 10, 11, 12, 14, 15, 18, 21, 22, 24, 25, 26, 27; Article VII, Section 1(2)(c); Article XIII, Sections 4, 7, 11, 19, 20; Article XIII, Section 8; Article XVI Sections 1, 2, 3 (4), 4, 7, and Article XXIV, Section 16 under the Utah Constitution, against Utah Governor Gary Herbert, Attorney General Mark L. Shurtleff, Francine Giani, Tony Taggart, Wayne Klein, Keith Woodwell, George Robison, public officers of the State of Utah, in their individual and official capacities, and against the State of Utah. Francine Giani is the head of the Department of Commerce and oversees the Utah Division of Securities (herein "DOS"). Tony Taggart, Wayne Klein, and Keith Woodwell are former or current Directors of the DOS, and George Robison was/is head of the licensing area of the DOS. Taggart, Klein, and Woodwell are all licensed attorneys, who were under oath to support and defend the Constitutions, owed a fiduciary duty to the citizens of this state to protect their rights, and yet used their superior knowledge of the law, and their authority under color of law, to violate the rights of Utah's citizens with total and complete disregard for the most basic constitutional rights, "trampling them" under their feet (Salt Lake Tribune, July 4, 2008).

Plaintiffs were professionals engaged in the financial services industry:  Henry Brock,

CPA, MBA, CLU, Chartered Financial Consultant had some 10 years of university credits in business, finance, taxation, and investments, including a B.S. in Accounting from BYU, and almost four full years of post-graduate studies in business finance; over 23 years experience with a reputation for competency and integrity; was named by Money Magazine as one of America's Top Financial Planners as selected by his peers (his competitors); was named by Governor Norm Bangerter to serve on the 3-person Thrift Panel established by the 1989 legislature to arbitrate claims against five failed thrift institutions;  and author of the highly acclaimed book, Your Complete Guide to Money Happiness. Jay Rice was a graduate of the University of Utah where his immediate family had generously donated means for the construction of the football stadium; and had over a dozen very successful years in the securities industry. They were both highly respected in their professions and leaders in the financial industry where there is no asset more important or valued than trust and reputation. Yet both, due to gross violations of their Constitutional rights were destroyed: lives, reputations, and financially. Plaintiffs will show that certain defendants, if not all, are not entitled to governmental immunity under UCA 63-30-10 et seq.

2.        **Breach of right to peaceably assemble.** Plaintiff, Henry S. Brock alleges that Klein and Woodwell would not allow him and his sons the freedom to assemble or associate in business together in the same office space for two years though they engaged in wholly separate business operations, and over $20,000 in legal fees were spent for that constitutional right; in the Stipulation and Consent order between the DOS and Brock signed in March of 2006, he was barred from assembling with any persons employed with any broker-dealer or investment adviser licensed in this State, again denying him his constitutional right to peacefully assemble.

3

3.          Breach of right to redress of grievances. Plaintiff Brock alleges he was denied the right to petition the Government for redress of grievances in March or April of 2005, when Klein withdrew from the scheduled hearing denying Brock an opportunity to prove his case, and later went on a fishing expedition and piled on 25 contrived allegations based on "no new facts or information" (*See Amended Complaint, Aug. 5, 2005*) and he could no longer afford to fight, so Brock settled due to financial ruin; by entering into the Stipulation and Consent Order, under financial duress brought on by the Division, Brock waived any right to a hearing to challenge jurisdiction or the Division's evidence asserted against him, any right to present evidence on his behalf, and he gives up the right to seek agency review or appeal of this matter, administrative or judicial; and, if he violates the Order, $100,000 fine and criminal charges will be due and payable immediately, after notice and opportunity to be heard before an administrative officer who is an employee of and dominated by Klein and his "overzealous prosecution of securities violations"; all this as clearly substantiated by the official public report issued by the Utah Legislative Auditor General's office on July 3, 2008 after conducting a nine-month investigation into alleged wrongdoings by the DOS (hereinafter "Legislative Audit"), and by Brock's Stipulation and Consent Order of April, 2006.

4.          Breach of right to redress of grievances / due process. Plaintiff Rice alleges

he was not allowed to redress his grievances with the government after an audit in 2000, when he was not allowed to service client accounts and conduct business, trade stock—no explanation, therefore, he went out of business. There was no explanation given to Rice.  His Broker/Dealer, Intermountain Financial Services (IFS) (Kent Sweat) simply told Rice that the DOS gave no explanation and they also pressured Ken Sweat to eventually fire Rice.  Rice's

clientele of over 300 accounts eventually went someone else to do business as well as the clients of three other brokers in Rice's office.  Rice had to continue to pay for office overhead, salaries of secretaries, rent, computer software systems for trading systems, office equipment, etc. for several years waiting for the DOS to render some type of decision in their examination. In a good faith attempt to save his business, and though under no legal obligation to do so, Plaintiff Rice personally paid $400,000 in net balances caused by the clearing firm not issuing margin calls and selling accounts out.  Rice could not get Taggart and the DOS to issue an examination exit letter to show cause why they stopped him from doing business. DOS would not give Rice a hearing to allow him to prove how wrong the charges were.  After thousands of dollars in legal fees, Rice persuades DOS to schedule a hearing in July of 2001, but the ALJ of the DOS never issues verdict. After one year, appealed to Judge Leslie Lewis, and in 2003 Judge Lewis dismissed the case and gave Taggart a thorough tongue lashing, which is found in her decision; she dismissed it on Constitutional DUE PROCESS violations.  DOS appeals, and with Plaintiff Rice unable to afford an attorney or appear in court, the appeals court overturns the district court decision. In 2005, DOS finally issues the findings of the ALJ from the hearing conducted in 2001. After seeking redress of grievances for 5 years, Rice is emotionally and financially bankrupt. The Legislative Audit criticizes the DOS for inappropriately publicizing administrative actions, for not informing a business they were being investigated, for keeping allegations in complaints as "bargaining chips" even though the DOS knows them to be false, and for continuing to pursue actions for cases handled in District Court (pg. ii) contrary to statute.

    5.       Breach of right to unreasonable search and seizure. After obtaining his Series

6 securities license on August 28, 2002, and only thereupon coming under the jurisdiction of

the DOS, Brock alleges barely over one month later, on October 7, 2002, after a meeting on

October 4th with Defendant Taggart and under Taggart's personal instructions, examiners

from DOS made an unreasonable search and seizure of his personal papers and effects by

downloading the complete contents of his computer hard drive without permission or

warrant showing probable cause, supported by oath or affirmation, and particularly

describing the place to be searched and the things to be seized; massive amounts of

information from the previous 15 years (not the statutory limitations of 5 years on

prosecutions and investigations), a dozen other businesses, and all personal information,

including personal journals, financial, medical and other confidential information of Brock

and the confidential health records and financial records of dozens of employees and

hundreds of clients, confidential ecclesiastical information, confidential legal records and

proceedings, confidential records of persons with mental illnesses, etc.—even copies of bank

records, account statements, copies of checks written and received, deposits and associated

deposit slips identifying names on checks, time period of January 1996 to the present.  After

the downloading was already occurring, the examiner put a piece of paper in front of Brock

and said "either sign this or we'll shut you down right now."  Brock was never allowed to

read the two-page document, single spaced, nor was he given a copy of the document, nor

could his attorney obtain a copy  from DOS years later when Brock was defending himself.

Employees who witnessed the unconstitutional search and seizure are shocked to this day.

(See JOHNSON v. UNITED STATES. No. 329. Feb. 2, 1948. "…The Fourth Amendment

to the Constitution of the United States provides: 'The right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and seizures, shall

not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' Entry to defendant's living quarters, which was the beginning of the search, was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right. Cf. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654.  The point of the Fourth Amendment, **which often is not grasped by zealous officers,** is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. **Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate** instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. ….  The right of officers to thrust themselves into a home is also a grave concern, **not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance.** When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, **not by a policeman or Government enforcement agent.  ….**  No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. …  The government contends, however, that this search without warrant must be held valid because incident to an arrest [or filing an administrative complaint] ….  The Government, in effect, concedes that the arresting officer did not have probable cause …  It was therefore their observations

inside of her quarters, **after they had obtained admission under color of their police authority**, on which they made the arrest.  **Thus the Government is obliged to justify the arrest [or complaint] by the search and at the same time to justify the search by the arrest [or complaint].  This will not do. An officer gaining access to private … quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law.** 'Belief, however well founded, that an article sought is concealed …. furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause.' Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145, 51 A.L.R. 409.  In Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (24 A.L.R. 1426)) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two (Fourth and Fifth) Amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty, and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the fundamental rights of the individual citizen—the right to trial by jury, to the writ of habeas corpus, and to due process of law. **It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured**

**by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers." [brackets inserted by Plaintiffs].**

6.    Breach of right against unreasonable search and seizure. Plaintiff Rice states that no reasons were given for the March 2009 illegal search and seizure. Rice was out of town, not present, not informed, nor was permission given. The examiners of the DOS searched and removed items from Rice's office without him even being present.  He told the examiners that he would be back the next day, but they would not listen and continued to go through his files—to the point of taking over his office, using several desks to work at while his employees were forced out of their work stations.  No warrants were issued and they gave no cause for entering his office.  They took copies of this "Track Record" and had it audited for 3 months trying to find errors in its percentage return.

7.    Both Plaintiffs claim malicious prosecution claims under the Fourth Amendment suggesting the threat of criminal proceedings, without probable cause, with malice, and termination in favor of the criminal defendants.  In the Brock case, he alleges the illegal search and seizure occurred under Securities Director, Tony Taggart, THE UNWILLINGNESS TO PRODUCE THE DOCUMENT HE SIGNED UNDER COERCION AND PURSUE THE ILLEGAL ACTION AGAINST HIM WAS PURSUED BY DIRECTOR KLEIN, AND THE UNWILLINGNESS TO ACKNOWLEDGE THE ABUSE, TO INTENTIONALLY IGNORE IT, AND TO AFFIRMATIVELY EXTEND THE PROSECUTION, EVEN AFTER THE UTAH LEGISLATURE'S AUDIT FOUND RAMPANT ABUSES OF CIVIL RIGHTS WAS PERPETRATED AT THE DECISION OF DIRECTOR WOODWELL.

8.      Breach of right to due process. Plaintiffs Brock and Rice allege that the illegal

search and seizure is prima facie that the State of Utah compelled them to be witnesses

against themselves and were deprived of liberty and property without due process of law.

The exclusionary rule of the Fourth Amendment may also be considered to follow directly

from the constitutional language, such as the Fifth Amendment's command that no person

"shall be compelled in any criminal case to be a witness against himself" and that no person

"shall be deprived of life, liberty or property without due process of law."  The exclusionary

rule is grounded in the Fourth Amendment and it is intended to protect citizens from illegal

searches and seizures.  This is especially relevant because DOS, under Director Klein, has

established that through Brock's Consent Order, the division may proceed against him

criminally if he exercises his constitutional rights of due process either through

administrative or judicial means, wholly in violation of his Fourth, Fifth, and Sixth

Amendment rights, that are made applicable to states under the 14th Amendment.

9.      Breach of right to fair trial or hearing. Brock also claims he was denied his right to a

fair trial or hearing which includes the following rights: A SPEEDY AND PUBLIC TRIAL,

BY AN IMPARTIAL JURY, TO BE INFORMED OF THE NAUTRE AND CAUSE OF

THE ACCUSATION, TO BE INFORMED OF THE NATURE AND CAUSE OF THE

ACCUSATIONS; TO BE CONFRONTED WITH THE WITNESSES AGAINST HIM; TO

HAVE COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS FAVOR,

AND TO HAVE THE ASSISTANCE OF COUNSEL FOR HIS DEFENSE. The Plaintiff,

having fought the division for 4 years, from the time of the unconstitutional search and

seizure by downloading his computer hard drive in 2002 with no explanation of his rights

whatsoever, to the fishing expedition issued by the Attorney General's Office in 2005

unconscionably asking for everything but the "kitchen sink" (see Exhibit 1), to the bankruptcy which led to Brock signing the Stipulation and Consent Order in 2006. Brock never made it to the administrative hearing stage which, as shown by the Legislative Audit and which has since been changed by statute, was compromised by the fact that the ALJ's who would have heard the case were employees under the direction and control of the Director of the Securities Division, all chances for review were by a board or commission directly overseen by the Directors of the Division, to an executive review by the Department of Commerce head, Francine Giani. Giani was reprimanded in the Legislative Audit for overall lack of confidence in the system by all financial planners who had been involved in the system during the tumultuous times leading up to, and even following, the 2008 audit, not to mention the internal strife within the Division itself, also documented by the Audit. In a letter from an attorney writing the Division in behalf of Brock, it is stated that Brock, but for the lack of resources would have continued his legal battle, and he always maintained his innocence of any and all charges. After only one month under license and jurisdiction of the DOS, a mere letter of correction would have been sufficient for lack of training by his broker-dealer with regards to minor compliance issues. The exclusionary rule would apply for any and all issues, complaints, or allegations made after the illegal search and seizure of October 7, 2002. The Complaint for 4-5 "minor rule violations" filed by the Division against Brock, that ultimately resulted Brock's Stipulation and Consent Order, was filed by the Division in March, 2003.

10.    Breach of right to a fair trial. Plaintiff Rice alleges deprivation of his rights to a fair trial, having liquidated his property and $3.5 million of net worth was spent fighting his case with DOS. After the initial audit, of March, 2000, Rice was forced to hire an attorney, a

former Director of the DOS, Mark Griffin, to encourage the DOS to produce any sort of

"Exit Letter" or any type of "findings" from their audit that would give evidence as to why

the DOS had put Rice and his broker's out of business from March to December, 2000.  In

the meantime, Rice had no answers for his clients, employees, landlord, brokers, etc.  After

repeated pleas to the Director of the DOS, Rice's attorney was successful in getting an "Exit

Letter" from the DOS, which was full of fabricated and false claims against Rice and his

Broker/Dealer, IFS.  Knowing the claims were false and fabricated, Rice immediately asked

for a hearing from the DOS, not understanding, at the time, that the DOS hearings were held

in their own offices, with their own Administrative Law Judge, who is employed, paid by,

and controlled the Director of the DOS, Tony Taggart, the very person behind the complaint.

Also, Rice was not aware that if any appeal was to be made, it would have to be made to Mr.

Tony Taggart, the Director of the DOS, who consulted and briefed the prosecution (the

Attorney General's office) on all cases brought before them.  In effect, Director Taggart

being guilty of "Redlining," disallowing a "fair" trial for any appellant procedure that took

place. (The Legislative Audit showed "redlining" by the Director to also be an ongoing

custom of the DOS under Director Klein.)  Being unaware of these facts, Rice pleaded with

his attorney for a hearing, so that he could prove his innocence and go back to work and

service whatever clients he was able to retain.  It took an additional 10 months to complete

the hearing, due to the DOS's office taking all of the scheduled time and Rice having to

reschedule the presentation of his defense.  After the completion of the hearing, the ALJ

employed by the DOS would not render a verdict or "findings" in the case and Rice had to

spend $10,000 in legal fees and another year to take his case to the 3rd District Court, before

Judge Leslie Lewis.  Judge Lewis, dismissed the DOS's case against Rice, on Constitutional

grounds and criticized Taggart and his office (DOS) for abuses they had heaped upon Mr. Rice. Even after having his case dismissed, the DOS would not reinstate Rice's license and allow him to go back to work. The DOS waited many more months and then appealed the District Courts decision. Due to Rice being broke and not being able to afford an attorney, emotionally exhausted, as well as physically being incapable of attending another hearing, the appellant court over-turned the 3rd District Courts decision, but was ordered to produce the audit and hearing findings that had been held in 2001, 4½ years earlier. On January, after almost 5 years since the DOS put Rice out of business, the DOS issued findings that included a few items, out of the 28 charges that they initially claimed against Rice. But even these charges were trumped up and went against the evidence presented at the hearing. Rice took out Bankruptcy in September of 2004. Prior to that, his net worth was roughly $2.5 million. For 5 years, DOS controlled his life and destroyed it in many ways—he had 5 children and a wife living at home, sold 2 homes, mortgaged two cars, a boat, which he eventually lost to repossession. The legal battle and financial devastation led to harm. In September of 2004, he took out bankruptcy. The legal battle and financial devastation led to harm emotionally, and in his relationship with his wife. The bankruptcy caused Rice's children educational disadvantages with long reaching lifetime affects. Family members were persecuted at school, by friends and neighbors—rumors were spread that he was a financial risk, business opportunities were eliminated, church callings disappeared or were dismissed due to background checks and personal bankruptcy. Job opportunities have diminished by 80%, causing millions of dollars in financial damages that will last for decades. Plaintiff Brock, his wife, and seven children have endured similar, multi-generational effects.

11.     Breach of right against cruel and unusual punishment, enforced by extortion, bribery, and witness tampering by the DOS.  Plaintiff Rice contends that excessive fines of $400,000 and punishments were initially imposed, suspension of his securities license, etc., when no actual fraud was neither claimed nor proven.  The fines were later reduced to $61,000 based upon the 3 clients DOS claimed lost money due to Rice's actions.  Two of the clients were customers and one was a customer of a broker in his office.  In 2009, all three of these clients provided written statements to the current DOS Director, Keith Woodwell, stating they had no claim against Rice—this is in conjunction with a possible settlement with the DOS to get the fine reduced to $0.  One client claims his investments were up 78% and the other claimed his investment was up 300%.  Director Woodwell told Rice he didn't like the letter that stated the investments were up 300%.  In mid-2009, Woodwell, who was acting like he was trying to help Rice, instead contacted the client directly and offered  the client $35,000 of the imposed $61,000 fine if the client would not write the letter, stating "the DOS would just as soon have a part of the fine go to you." This action by Woodwell exhibits Woodwell's criminal actions and malicious prosecution in the forms of extortion, bribery and witness tampering. Brock experienced similar calls to his clients by either Director Klein or others from within the DOS.

12.     Breach of right against cruel and unusual punishment. Plaintiff Brock alleges that under the personal instructions of Director Taggart, in his original complaint filed on March of 2003, he alleged 4-5 violations that are, within the industry, the Financial Industry Regulatory Authority (FINRA) defines as "minor rule violations" with a maximum fine of $2,500, even if they were proven as alleged. As mentioned, after being licensed and under the jurisdiction of the DOS for less than a month, Taggart charged Brock with a $100,000

fine, and being barred from the industry for life. At the time of the illegal search and seizure on October 7, 2002, Brock's businesses had a 9,000 square foot office at $15,000 lease rate per month with 18 employees. At the personal instructions of Taggart, the DOS immediately had his broker-dealer put him on probation and withhold over $150,000 commissions due his company and his employees, and within one week terminate his employment. This action by Director Taggart forced Brock to be unable to meet payroll or pay his associates their rightfully earned commissions, immediately close all his businesses, and forced him into personal bankruptcy, primarily because he had personally guaranteed the $15,000 per month lease and was unable to meet payroll, both directly caused by the reckless, malicious, irresponsible, and ego-centric actions of Director Taggart. The DOS examiner boastfully informed him that "if you're forced into bankruptcy, that's your problem."

13.     Breach of other rights of plaintiffs under both the U.S. and Utah Constitutions.

Both Plaintiff's claim a list of other rights retained by the people under the United States Constitution and the Utah Constitution: the right to privacy to computer files, offices, property, including businesses, homes, cars, intellectual property accumulated over 25 years—all lost because their businesses were shut down; employment rights, rights to earn a living without presumption of guilt, the right to a "reputation" as specified in the Utah Constitution, of integrity, competency, and professionalism, which both Brock and Rice spent all of their adult lives, education and experience and for Brock, some 85,000 hours building. As the Legislative Audit explained, with the DOS someone is guilty until proven innocent and your trial won't even come unless you are the one that pays to force the issue. Under the supremacy of laws, the contract between the government and the people as found in the U.S. and State Constitutions, are supreme to statutes, administrative laws, the rules and

regulations of governmental agencies, and their policies and procedures. **This is most basic: "Let the end be legitimate…and all means which are…consistent with the letter and spirit of the Constitution." (McCulloch vs. Maryland, 1819) and "A law repugnant to the Constitution is void." (Marbury vs. Madison, 1803).** This includes government issued Stipulation and Consent Orders derived under fraudulent means and in gross deprivation of civil rights. .

14.    Both Plaintiffs allege violation of other inalienable rights not enumerated in the United States Constitution, but retained by the citizens of the Great State of Utah, as provided for by the 10th Amendment to the U.S. Constitution, and as specifically enumerated under the Utah Constitution, including but not limited to: the inherent and inalienable right to enjoy and defend their lives and liberties above and beyond the bottom line protections under the U.S. Constitution; to acquire, possess and protect property; to assemble peaceably, protest against wrongs, to communicate freely their thoughts and opinions; to protect life, liberty and property through due process of law, both substantive and procedural due process; to redress of injuries; rights of the accused person—to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, nor shall any person be twice put in jeopardy for the same offense—DOS had retried a client's case that had already been heard before the DOS and ruled upon in District Court; freedom from slander and libel; freedom from impairing contracts; slavery is forbidden—no "ball and chain"--even by the DOS who made Rice commute from Phoenix to Salt Lake because George Robison, the head of licensing at the DOS offices would not allow Rice to work in Salt Lake City; compensation for taking private property, including intellectual property, reputation and property rights in a name for public use to serve as an example to other planners—Director

Klein named Brock by name and his city of residence, making him the "Poster Boy" for fraud—making wholly false public statements before a large convention never even alleged in any complaint, then posted his speech on the internet for over 700 days, thereby taking Brock's name and reputation—built after 10 years of university credits in business and finance (six undergraduate and four years of graduate studies in business an finance) and a 25-year career known for expertise and integrity—all done maliciously to put fear into other financial planners, senior citizens, and to further Director Klein's personal agenda; uniform operation of law NOT THE INCONSISTENT, CAPRICIOUS, ARBITRARY, PUNITIVE AND CHAOTIC APPLICATION OF LAW OR SOME ABBERATION THEREOF; fundamental rights; limitation on alienation of franchise; franchises taken for public use; blacklisting is forbidden—DOS stopped Rice from servicing his clients, and the DOS also would not allow him to trade his own personal account with a "day trading" Broker-dealer called Bright Trading; trusts and combinations prohibited; officers not to make profit out of public money; rights of labor to be protected; A FREE MARKET AND RIGHT TO WORK POLICY IN UTAH; exchange of blacklisting prohibited and the legislature is to enforce this article; and when the Constitution is inforce, Executive Department officers shall perform such duties as are prescribed by this Constitution and as provided by statute.

15.     Both Plaintiffs Brock and Rice, allege that all defendants listed in this complaint have participated, conspired, both maliciously and intentionally, through malfeasance of their official and individual capacities, FAILING TO SUPERVISE, FIRE, CORRECT, OR REPRIMAND SUBORDINATES, thus violating all rights listed in the Bill of Rights under the United States Constitution, and the Utah Constitution which provides the citizens of Utah with a more thorough enumeration of their individual inalienable rights.  The Legislative

Audit of 2008 found in page i and ii, a Digest of a Performance Audit of the Division of

Securities, done by the Office of the Utah Legislative Auditor General, of the Great State of

Utah, states that the credibility of the Division had been challenged by those investigated for

procedural errors, overzealous pursuit of securities violations, the perception that those

investigated do not receive fair treatment—these concerns have been heightened by

personnel conflicts within the organization. Findings of the audit showed that, of some 101

complaints filed by the DOS against licensees over the four years covered by the audit, every

complaint resulted in a guilty verdict; not one licensee could prove his innocence. Another

finding showed that many problems were the result of the DOS not having established

policies and procedures, even throwing out the 1993 policy and procedure manual that was

suppose to be updated yearly. Yet another finding showed that case management is

inconsistent and, at times, appears inappropriate, including the DOS keeping allegations in

complaints the DOS knew to be false to use as "bargaining chips."  While the DOS may

protect securities investors; the audit showed the DOS regularly tramples the civil rights of

its licensees, destroying reputations and lives. And, when the Division wants to make an

example of someone, as in the cases of both Plaintiffs, the DOS not only posts false press

releases on the internet, THE DOS PAID GOOGLE A SPECIAL FEE TO ASSURE THAT

THOSE FALSE PRESS RELEASES WILL APPEAR AT THE TOP OF ANY GOOGLE

SEARCH, THEREBY DESTROYING THEIR REPUTATIONS. This occurred as the DOS

made the Plaintiffs the "Poster Boys of Securities Fraud in Utah" FOR YEARS!   The

division has significant authority but its credibility depends on using that authority

judiciously.  Both Brock and Rice have had their businesses shut down or scrutinized up to

this date with blacklisting and exchange of blacklisting spreading from the Securities

Division into the Department of Insurance, who have denied licenses, and over a dozen insurance companies either denying or cancelling contracts for employment with Brock & Associates.

16.     Plaintiffs Brock and Rice allege that the pervasive nature of the Securities Division actions against them have become multi-generational, affecting family members in the public arena, in churches, the community, neighborhoods, and even to strangers who hear about the suspicion of securities fraud to direct confrontation with the Securities Division posting the allegations on the Internet—inferring guilt, even while the Stipulation and Consent Order states that Brock neither admits nor denies the Division's allegations. Within press releases and within its Stipulation and Consent Orders, the DOS lists its allegations under large, bold headings titled "Findings of Fact," when there has never been any hearing and no independent judge or hearing officer has ever been made any such "findings of fact," and under the large, bold heading "Conclusions at Law," when, again, there have never been any such conclusions. If the DOS were held to its own standards of false advertising, its Directors would be charged criminally. The DOS does not  post anything that would suggest vindication of the accusations, even though Brock's attorney, Randall K. Edward, writes the Department of Insurance, June 30, 2006, that: "Brock's entry into the stipulation was based in large part on the advice of his counsel, based primarily on an analysis of his financial situation, under which he could ill afford to fight allegations brought against him (which he has steadfastly denied) rather than to pay for a full-fledged hearing and, if necessary, appeal, which was Mr. Brock's desire.  He never admitted the truthfulness of the allegations of the Division of Securities (although, for the limited purposes of the Order, he did not deny those allegations, solely in order to put the matter behind him), and, indeed, through responsive

pleadings, exhibits, affidavits, counter-motions, and cited legal authority, vigorously disputed the division of securities; statement of facts, it purported legal authority and its request for relief."

17.    The Plaintiffs allege gross, unconscionable and **"shocking"** violation of their Civil Rights, under Section 1983 with regards to violation of their federal constitutional rights, in addition to the violation of extended inherent and inalienable rights under the Utah Constitution.  All 3 Securities Division Directors ("an attorney, is an attorney, is an attorney") and other officers in their official and individual capacities, took an oath when they became officers of the court or State to solemnly swear (or affirm) that they will support, obey and defend the Constitution of the United States and the Constitution of this State, and that they will discharge the duties of their office with fidelity—citing Utah Constitution, Article IV Section 10—oath of office.

18.    Plaintiffs allege that these constitutional violations were committed as a result of the policies and customs of the Securities Division, Department of Commerce, State of Utah, and that the State of Utah is liable under the theory of respondeat superior for the torts committed by Defendants Giani, Taggart, Klein, Woodwell, and Robison. The Plaintiffs also assert that the Utah Governmental Immunity Act, UCA 63-30-10 et seq.,  is conditional upon government employees acting within prescribed policies and procedures, and does not grant a "license" to governmental employees, as superior U.S. and State Constitutions and U.S. Statutes confirm. Hence, they do not qualify for the conditional immunity because the Division's employees have not operated within a required set of policies and procedures since 1993, as found by the Legislative Audit, but rather, they, as "loose cannons on deck," took it upon themselves to act capriciously, arbitrarily, maliciously, and criminally. Their

actions run wholly counter to the inalienable rights guaranteed citizens from illegal governmental overreaching and infringement of rights, which our Founding Fathers purposefully sought to eliminate, and for which the Bill of Rights were instituted. All of the above acts were taken personally by, at the request of, with the full knowledge of, under the supervision and oversight of, approved by, the Directors Anthony Taggart, Wayne Klein, and Keith Woodwell, all of whom are attorneys, and who either knew, or should have known, they were purposefully infringing upon constitutional rights, and so any logical person would rightfully conclude they were acting illegally, purposefully, and maliciously. As government attorneys they have a heightened sense of fiduciary duty, a special duty, to protect citizens, responsibility, and liability than an attorney in private practice. They were using their superior knowledge of the law, and behind the badge of governmental immunity, and under the color of law, to act criminally.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343 over 1983 and pursuant to the Declaratory Judgment Act, 28 U.S.C. Sections 2201 and 2202. This Court has supplemental jurisdiction over plaintiff's cause of action arising under the Utah Constitution pursuant to 28 U.S.C., Section 1367.

20.      Venue lies in the United States District Court for the District of Utah, 28 U.S.C., Section 1391.

**PARTIES**

21.      Plaintiff Henry S. Brock, CPA, MBA, CLU, ChFC, President, Brock & Associates, LLC, Author, Your Complete Guide to Money Happiness.

22.      Plaintiff Jay Rice, President, JAR Investment Company, Ltd.

23.      Defendant Gary Herbert, Governor, State of Utah

24.      Defendant Mark L. Shurtleff, Utah Attorney General

25.      Defendant Francine Giani, Executive Director, Department of Commerce

26.      Defendant Anthony Taggart, former Director of the Division of Securities

27.      Defendant Wayne Klein, former Director of the Division of Securities

28.       Defendant Keith Woodwell, Director of the Division of Securities

29.      Defendant George Robison, Head of Licensing for Division of Securities

30.      Defendant State of Utah

**BACKGROUND**

31.       After a meeting with Director Taggart on Friday, October 4, 2002 and under the personal instructions of the director, on Monday, October 7, 2002, the DOS examiners, Russell Wilson and Sheila Thomas, walked into Brock's offices unannounced, and after a tour of the offices, as soon as they saw his computer room, the senior examiner, nodded to his assistant, and she left to get some computer people waiting outdoors, and they immediately came into Brock's office, went directly into the computer room, told Brock's computer assistant to step aside, and began to download the complete contents of his

computer's hard drive without permission, which contained massive amounts of information

from the previous 15 years (not the five years as stated by statute), a dozen other businesses,

and all personal information, including personal journals, financial, medical and other

confidential information of Brock's and the medical and financial records of dozens of

employees and hundreds of clients, confidential ecclesiastical information, confidential legal

records and proceedings, confidential records of persons with mental illnesses, etc.  None of

the four DOS people gave Plaintiff any warrant.  After the downloading was already

occurring, the examiner put a piece of paper in front of Brock and told him "either sign this

or we'll shut you down right now."  Brock was never allowed to read the document, nor was

he given a copy of that document, nor would the DOS produce a copy of the document after

repeated requests by his attorney years later when he was defending himself.  This entire

proceeding was witnessed by several employees who are in shock of it to this day . . .

32. In March of 2000, two examiners, George Robison and Sheila Thomas, came into

Plaintiff Jay Rice's office unannounced, did not explain the reason for the audit or what

they call an examination.  They told his Broker/Dealer (B/D) that he was not allowed,

along with 3 other Registered Representatives in Rice's office that they could not service

client's accounts and trade stock Options or Stocks for them.  Therefore, Rice and

company were out of business and would soon be bankrupt.  In April of 2000, Rice paid

$400,000 plus in net debit balances cased by the clearing firm not issuing margin calls

and selling accounts out.  DOS should have gone after the clearing firm, which was a

NASD MEMBER.  But the DOS would not go up against a NASD member firm,

Prejudiced.  Plaintiff could not get the DOS to issue an examination exit letter to show

cause why they stopped Rice from doing business with clients.  In December, 2000, DOS

finally issued an exit letter with findings.  Rice immediately asked for a hearing.  The

DOS would not give Rice a hearing to allow him to prove how wrong the charges were . .

**33.**     July 3, 2008, the Office of the Utah Legislative Auditor General, presented the

Legislature and general public with a Digest of a Performance Audit of The Division of

Securities.  "The credibility of the Division of Securities has been challenged by those

investigated by the division.  Their concerns are with procedural errors, an alleged

overzealous pursuit of securities violations and the perception that those investigated do not

receive fair treatment.  These concerns have recently been heightened by personnel conflicts

within the organization.  These concerns appear to be a result of the division not following

established policies and  procedures. Case management is inconsistent and, at times, appears

inappropriate.  While the division protects securities investor, it is alleged the division has

abused its power and damaged reputations.  The division has significant authority but its

credibility depends on using that authority judiciously . . ."

**34.**     Plaintiffs and some Defendants alike allege that even after the 2008 audit, nothing

in the Division of Securities has changed.  DOS continues to go after both Plaintiffs,

continuing to ruin reputations, denying rights to life, liberty and property; curtailing earning

potential and business, even to blacklisting them with the Department of Insurance and

numerous other insurance companies, the only means of livelihood available after the

allegations and character assassination the DOS finds joy in doing.  Plaintiff Rice was denied

the ability to do securities, denied his insurance license recently based on the revocation of

his securities license, now he just passed his real estate license just to have a right to work,

but he is worried because the Real Estate Division is housed under the Department of

Commerce—he is wondering if his right to have his labor protected will be curtailed because of retaliation.  Brock has worked for a year to contract with an insurance company who gave a verbal agreement to provide for a living allowance for new associates in training, and just a few weeks ago that agreement was stopped completely because of exchange of blacklisting between government departments in the State of Utah and the insurance company, solely as a proximate result of the DOS's illegal and invalid Stipulation and Consent Order. This has happened to Brock on at least a dozen other occasions, costing his company untold hours, expenses, and millions of dollars in lost earnings.  The Utah State Bar Association is looking into violations of the Rules of Professional Responsibility for all three Division Directors, all lawyers, Taggart, Klein, and Woodwell.  Criminal charges could be filed against Director Woodwell for witness tampering, bribery, and extortion in the Rice case, by offering Plaintiff's client $35,000 of the $61,000 fine supposedly Rice owes the Division of Securities—even when all 3 complainants wrote letters stating that they were not only not injured, but had experienced from 78% to 300% increases in their investments!

## COUNT I

**35.**      Plaintiffs re-allege and incorporate by reference paragraph 1—34.

**36.**      Plaintiffs claim damages under 42 U.S.C., Section 1983 for the injuries set forth above against Defendants Giani, Taggart, Klein, Woodwell, and Robison for violation of their constitutional rights under color of law.

## COUNT II

**37.**    Plaintiff re-alleges and incorporates by reference paragraphs 1—36.

**38.**    Prior to July 3, 2008, the date the Legislative Audit was published, the State of

Utah and the Department of Commerce have allowed the personnel within the  Division of

Securities to independently, on their own volition, and personally to act capriciously,

arbitrarily, maliciously, and criminally without oversight, in fact throwing out the Policies

and Procedures Manual in 1993 which was to be updated yearly, exhibiting deliberate

indifference to the constitutional rights of persons in the State of Utah, which cased the

violation of Plaintiffs' rights.

**39.**    It has been and is the policy and/or custom of the State of Utah, the Utah

Department of Commerce, and the Division of Securities to fail to exercise reasonable care in

hiring its directors, investigators, attorneys, assistant attorney generals, members of the

advisory board, licensing agents, etc.

**40.**    It has been and is the policy and/or custom of the State of Utah, the Utah

Department of Commerce, and the Division of Securities to inadequately supervise and train

its public and appointed officers in their individual capacities, including their obligations to

the U.S. Constitution and the Utah Constitution for which they take an oath to protect, and

yet act in whole disregard to,  including the Governor, the Attorney General, the Executive

Director of the Department of Commerce, and the Directors of the Division of Securities,

including Taggart, Klein, and Woodwell, thereby failing to adequately discourage further

constitutional violations on the part of its division officers.

**41.**     As a result of the above described policies and customs, executive directors,

directors, investigators, attorneys, assistant attorney generals, licensing agents, administrative

law judges, and even the newly appointed Securities Commission, believed that their actions

would not be properly monitored by Utah State Executive Branch Elected and Appointed

Officers, and other supervisory officers, and that misconduct would not be investigated or

sanctioned, but would be tolerated.

**42.**     The above described polices and customs demonstrate a deliberate indifference on

the part of the State of Utah to the constitutional rights of persons within the State of Utah,

and were the cause of violations of Plaintiffs' rights alleged herein.

## COUNT III

**43.**     Plaintiffs re-allege and incorporate by reference paragraph 1—42

**44.**     Defendant State of Utah is liable for the violations of both Civil Rights under the

United States Constitution and individual and inalienable rights expanded and contained in

the Constitution of the State of Utah.

## PRAYER FOR RELIEF

**45.**     WHEREFORE, PLAINTIFFS RESPECTFULLY REQUESTS THIS COURT TO:

  A.  Enter Summary Judgment in favor of the Plaintiffs against the Defendants;

  B.  Enter an order declaring Defendants conduct unconstitutional;

  C.  Award Plaintiffs compensatory and punitive damages against Defendants in

     the amount of:

1. Special damages for loss of past years' income and loss of future income due to damage to reputation, business overhead, excess interest paid due to bankruptcies and loss of credit, loss of insurance policies, legal fees, court costs, etc. Henry Brock: $26,655,000, and Jay Rice: $31,000,000.    Total: $57,655,000

2. General Damages for physical, emotional, social effects on plaintiffs, their spouses, and children, including: doctor's visits and costs of medications and increased costs of insurance, loss of thousands of nights loss of sleep, loss of health, including loss of insurability for life insurance; loss of opportunities for selves and children; loss of reputation both personal and business; loss of numerous major business opportunities; false criminal accusations; denials of licenses by other governmental agencies; denials of contracts by insurance companies and others for income; fighting ethics complaints brought against them by their professional associations and societies; denial of membership in business associations and memberships; social effects; lifetime loss of opportunities for children due to educational and other forever lost opportunities to develop their talents; loss of many years' worth of attention, time, parenting, disciplining, etc. for children while parents were fighting allegations and extra time spent attempting to earn income; hyper and chronic severe depression, anger, hostility, hyper-anxiety, trauma; continuing family, social and church alienation; loss of four homes, autos, boats, other; etc. Henry Brock: $54,000,000, and Jay Rice: $50,000,000. Total: $104,000,000.

3. Nominal Damages for grossly excessive, intentional, malicious, persistent, violation of civil rights perpetrated against the plaintiffs as a regular and ongoing practice of conducting the affairs of the Utah Department of Commerce and the Division of Securities, in order to deter future such behaviors, including, but not limited to:
   a. Millennium Act: specifically provides $10,000 per day for libel posted on the internet: Henry Brock 1,977 days and counting = $19,575,000, and Jay Rice 1,642 days and counting = $16,425,000.
      Millennium Act Total = $36,000,000
   b. General punitive damages: $160,000,000
   c. Total Nominal-punitive damages (a + b above): $196,000,000

4. Total Damages (1 + 2 + 3 above) = $357,655,000.

D.  Award Plaintiffs' counsel reasonable attorneys' fees and costs pursuant to 42 U.S.C., Section 1988 and any other applicable provisions of law;

E.  Enter a permanent injunction, upon proper motion, requiring Defendant, State of Utah to adopt appropriate policies related to the hiring and supervision of its public officers; and

F.  Grant to Plaintiffs' such other and further relief as may be just and proper under the circumstances, including but not limited to appropriate injunctive relief, including:

1.  Any and all existing bars, stipulation and consent orders, fines, etc. dismissed effective immediately.

2.  All plaintiffs' securities licenses returned to them, immediately, that plaintiffs held  prior to actions by the DOS without further requirement.

3.  The DOS is to expunge plaintiff's DOS records so that they are not required to answer "yes" to any disclosure questions on any future U-4 licensing application with FINRA or any state, or any application for contracting with an insurance company or other agency or business, and for any and all other purposes. This can only be accomplished by the DOS with FINRA (Financial Industry Regulatory Authority) and the SEC.

4.  Plaintiffs reasonably petition that any and all postings about them be removed from the internet immediately, both in general and on the DOS website.

5.  Though never capable of restoring the damage done, plaintiffs petition that DOS make all efforts possible at reasonable efforts at restitution of

reputation, including the following minimums: Written apologies via: (a) a

letter to each plaintiff for their personal files, and (b) press releases

published in all the places where the DOS publicized the previous Consent

Orders, specifically: (i) a press release of apology issued to the general

press, (ii) a notice of apology or bulletin sent to all registered

representatives in the State of Utah, (iii) press release of apology posted

on the internet. <u>The DOS must do all it can to restore plaintiff's</u>

<u>reputations</u>.

Respectfully submitted,

<u>/s/ JoAnn S. Secrist</u>
JoAnn S. Secrist, Bar #6650
640 East 700 South, Suite 302
St. George, Utah  84770
(435) 668-2021 or 628-4957
(435) 673-8991 Facsimile